# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## NORTHERN DIVISION
## CIVIL NO. 2:16-cv-00008-BO

|  |  |  |
|---|---|---|
| TYRONN FEREBEE, on Behalf of Himself and on Behalf of All Others Similarly Situated, | ) ) ) ) | **BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION OF COLLECTIVE ACTION AND TO PROVIDE NOTICE UNDER THE FAIR LABOR STANDARDS ACT** |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| EXCEL STAFFING SERVICE, INC., | ) ) | |
| Defendant. | ) | |

Defendants Excel Staffing Service, Inc., Contractors & Consultants, Inc., Excel Staffing Professional Nursing, Inc., Frederick Tolin, and David Tolin ("Responding Defendants"), pursuant to Local Rule 7.1(f), submit this Brief in Opposition to Plaintiff's Motion for Conditional Certification of a Collective Action and to Provide Notice under the Fair Labor Standards Act, 29 U.S.C. § 216(b) and corresponding Memorandum of Law. [D.E. 77, 78.]

In this wage and hour case, Plaintiff Tyronn Ferebee, a Certified Nursing Assistant (CNA), seeks conditional certification of a broad, ill-defined purported collective of "nurses" across the United States whom he alleges the Responding Defendants misclassified as independent contractors. His Motion and supporting materials, however, do not show that he and the proposed class members are similarly situated. Plaintiff offers no personal knowledge or information concerning the would-be class members who worked at other facilities in this State or in other states. Nor has Plaintiff even demonstrated that he is similarly situated with the would-be class members who worked at the same facility where he worked.

As explained below, Plaintiff cannot meet his burden of showing he is "similarly

situated" to the class he proposes by merely claiming that there were other individuals classified as independent contractors who were not paid overtime. Because Plaintiff has no personal knowledge and no evidence regarding the putative class members or their relationship with any of the Responding Defendants, he cannot show he is similarly situated to the class members he seeks to represent. For these reasons and those outlined below, Plaintiff has failed to meet his burden of showing this broad group of putative class members should be conditionally certified as a collective action.

## PROCEDURAL HISTORY

Plaintiff filed this lawsuit nearly one year ago on February 12, 2016. [D.E. 1.] The Court entered a Scheduling Order on July 1, 2016, that allowed for a limited "Pre-Certification" Discovery concerning "the factual circumstances underlying plaintiff's motions for conditional certification under the FLSA [Fair Labor Standards Act, 29 U.S.C. § 201 et seq.] and for certification under Rule 23." [D.E. 18.] Plaintiff filed an Amended Complaint on August 3, 2016. [D.E. 22.] Despite the breadth of his allegations and his lack of knowledge about Defendants' businesses and the circumstances and locations of proposed FLSA and Rule 23 class members, Plaintiff did nothing to marshal evidence to support the allegations in his Amended Complaint or to prosecute his claim, either individually or as a potential collective representative. At no time during the precertification discovery period did Plaintiff engage or attempt to engage in any discovery with respect to any defendant. On the evening of October 3, 2016, the day precertification discovery was to close, Plaintiff filed a motion to extend discovery and modify the Scheduling Order. [D.E. 38.] The Magistrate Judge denied that Motion [D.E. 58], and Plaintiff has sought reconsideration, spawning a considerable amount of briefing with respect to this issue.

In the instant Motion, Plaintiff asks the Court to conditionally certify a nationwide collective of "all nurses of Defendants Excel Staffing Service, Inc., Contractors & Consultants, Inc., Excel Staffing Professional Nursing, Inc. David Tolin, and Frederick Tolin classified as independent contractors during any week in the three [year] period prior to the date the Court grants conditional certification to the present."  D.E. 78 at p. 5.  By proposing to certify this collective class, Plaintiff has abandoned his attempt to certify the FLSA class identified in his Amended Complaint.  *See* D.E. 22 at p. 10[1]

## NATURE OF THE CASE AND BACKGROUND FACTS

In his attempt to show that he is similarly situated to members of this broad class, Plaintiff offers only conclusory allegations for which he has no personal knowledge and statements or information which Plaintiff misconstrues and erroneously tries to attribute to *all* Responding Defendants, without any supporting evidence for doing so.

The record, however, shows that:

- Plaintiff was licensed as a CNA in North Carolina.  (Tolin Aff. ¶¶ 3, 20)[2]

- Plaintiff was an employee of Excel Staffing Service, Inc. ("Excel Staffing") from about late April 2014 until May 27, 2014.  (Tolin Aff. ¶ 3)  During that time, he was assigned to

---

[1] Previously, Plaintiff asserted that the proposed class of "similarly situated workers" was "properly defined" as "all workers of Staffing Employer [Defendants Excel Staffing Service, Inc., Contractors & Consultants, Inc., Excel Staffing Professional Nursing, Inc. David Tolin, and Frederick Tolin] classified as independent contractors during any week during the three year period prior to the filing of the Complaint to the present."  *See* D.E. 22, p. 10.  In the present Motion Plaintiff has narrowed the scope of his class to "nurses classified as independent contractors" (as opposed to "workers") and recalibrated the relevant time period for his class.  In light of this unilateral amendment, Plaintiff should be estopped in the future from seeking to certify a broader class.  Regardless, Plaintiff's newly-formulated proposed class, while slightly narrower than its predecessor, still suffers from many of the same fatal flaws and remains ill-suited for collective treatment.  Plaintiff's conclusory allegations, without more, are insufficient to show he is similarly situated to "all nurses" – anywhere in the country – who may have worked as an independent contractor with one of the defendants.

[2] Filed contemporaneously with this brief and incorporated by reference as if fully set forth herein is the Affidavit of David J. Tolin, which is referred to as "(Tolin Aff. ¶ ___)."

the Colony Ridge facility in Nags Head, North Carolina, where he worked as a CNA. While employed with Excel Staffing, for all services rendered, Plaintiff was treated and compensated as an employee and received overtime for hours worked in excess of 40 hours in a workweek. (Tolin Aff. ¶ 5)

- Plaintiff later worked with Contractors & Consultants, Inc. ("C&C") as an independent contractor from on or about May 29, 2014 until September 8, 2015. (*Id.* ¶ 14) During that time, his only assignment was at the Colony Ridge facility, and his work was entirely supervised and directed by employees of or other professionals affiliated with Colony Ridge. (*Id.* ¶¶ 14, 16-18)

Indeed, there is no evidence from Plaintiff identifying:

- the potential number of class members (while he speculates that there are "hundreds" [D.E. 78, p.23]);

- the credentials of any of the putative class members;

- the states in which the putative class members work, other than North Carolina;

- the relationship of each putative class member with each named defendant;

- any circumstances relating to any of the putative class member's work; or

- the facilities where the putative class members work or any information regarding the (1) owners and operators of those facilities; (2) the number of putative class members at each facility in the relevant period; (3) the class members' responsibilities, job classification(s), job duties, or hours worked at those facilities; (4) any common policies across those facilities; or (5) each facility's relationship with each named defendant.

To the contrary, during his time at C&C, Plaintiff worked at only one facility, Colony Ridge. (Tolin Aff. ¶ 20). He never worked as a LPN or RN and had no business reason to interact with any CNAs, LPNs, or RNs who may have been assigned to other facilities. (*Id.* ¶¶ 19-20).

**STANDARD OF REVIEW**

Section 216(b) of the FLSA sets forth the standard for class certification and provides: "[a]n action...may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."

4

"The paramount issue in determining the appropriateness of a conditional class certification is whether plaintiffs have demonstrated that potential class members are 'similarly situated.'" *Bouthner v. Cleveland Const., Inc.*, CIV.A. RDB-11-0244, 2012 WL 738578, at *3 (D. Md. Mar. 5, 2012) (quotation omitted). Plaintiff must show a "reasonable basis for his or her claim that there are other similarly situated employees." *Sodekson v. East Coast Restaurant & Nightclubs, LLC*, No, 4:15-cv-02711-RBH, 2016 WL 4613386, *5 (D.S.C. Sept. 6, 2016) (citation omitted). Alternatively, courts have required plaintiffs to "make a 'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'"[3] *Id.* (citing *Myers v. Hertz Corp.*, 624 F.3d 537, 554-55 (2d Cir. 2010)). Other courts have described this requirement as demonstrating "some identifiable factual nexus which binds the named plaintiffs and the potential class members together." *MacGregor v. Farmers Ins. Exchange*, No. 2:10-CV-03088, 2011 WL 2981466, at *2 (D.S.C. July 22, 2011).

A plaintiff's allegations alone are not enough to meet this burden. *MacGregor*, 2011 WL 2981466, at *2 (citing *Bernard v. Household Int'l, Inc.*, 231 F. Supp. 2d 433, 435 (E.D. Va. 2002)) ("Mere allegations will not suffice; some factual evidence is necessary."); *Sodekson* at *id*. *See also Slavinski v. Columbia Ass'n, Inc.*, No CCB-08-890, 2011 WL 2119231, *2 (D. Md. May 27, 2011) (denying precertification and explaining "the plaintiff's assertion that merely alleging an employer potentially misclassified employees is sufficient to warrant conditional certification is an *incorrect* statement of the law.") (emphasis added); *Silverman v. SmithKline*

---

[3] While a "discrimination case focuses on whether the defendant had a policy of discriminating against its employees," the "focus of a collective action in this case would be the distinction between an employee and an independent contractor." *See Pfaahler v. Consultants for Architects, Inc.*, No. 99 C 6700, 2000 WL 198888 at *3 (N.D. Ill. Feb. 8, 2000). The focus "would not be [defendant's] actions, but rather the nature of the claimants' employment relationship with [defendant]." *Id.*

*Beecham Corp.*, No. CV-0607272 DSF(CTx), 2007 WL 6344674, *2 (C.D. Calif. Oct. 27, 2007) ("A standard requiring no more than mere allegations would render conditional certification not only lenient but virtually automatic.").

Moreover, "[w]hen sufficient evidence in the record at the initial 'notice' stage makes it clear that notice is not appropriate, ... a court can ... deny certification outright." *Bouthner,* 2012 WL 738578, at *4. In particular, a court may determine that certification is inappropriate where multiple claims cannot be adjudicated efficiently because they would require "substantial individualized determinations for each class member." *Syrja v. Westat, Inc.*, 756 F.Supp.2d 682, 686 (D.Md.2010) (*quoting Purdham v. Fairfax Cnty. Pub. Sch.*, 629 F.Supp.2d 544, 549 (E.D.Va.2009)); *England v. New Century Fin. Corp.,* 370 F.Supp.2d 504, 511 (M.D. La. 2005). Courts have also previously held that the consideration of issues relating to the manageability of a proposed collective action is appropriate at the notice stage of a FLSA action. *See Bouthner,* 2012 WL 738578, at *4. In cases in which the court "determines that individualized determinations are more likely to predominate, a collective action would hinder, rather than promote, efficient case management." *Sodekson* at *id*.

Because Plaintiff here has failed to meet his burden of showing that he and the potential opt-ins are similarly situated, no notice should issue. Further, the competent evidence before the Court shows that individual determinations would predominate in this case, and thus, collective treatment would be inappropriate.

## ARGUMENTS AND AUTHORITIES

**I.      Plaintiff's Allegations and Speculative "Evidence" Do Not Establish That He Is Similarly Situated with the FLSA Class He Proposes.**

Plaintiff, after having an opportunity to engage in pre-certification discovery, now fails to present evidence to show that the class he proposes is similarly situated. The conclusory

allegations in his Declaration do not provide factual support—based on his personal knowledge – which is required to show the putative class members are similarly situated to him.

Where a plaintiff fails to provide sufficient evidence that he is similarly situated with others in his proposed class, courts have denied requests for conditional certification in FLSA worker misclassification cases.  For example, in *Sodekson v. East Coast Restaurants & Nightclubs, LLC*, No. 4:15-CV-02711-RBH, 2016 WL 4613386 (D.S.C. Sept. 6, 2016), the plaintiff alleged that she and a class of exotic dancers were misclassified as independent contractors instead of employees and owed overtime.  Plaintiff danced at one nightclub but sought to certify a class of dancers who worked at multiple nightclubs across multiple states. *Id.* at *1.  Like Plaintiff here, plaintiff Sodekson had the opportunity to engage in precertification discovery, but did not do so. *Id.* at *8.  Instead, she offered her own affidavit and asserted "upon information and belief" that the defendants' alleged compensation policies were applied uniformly across their club locations throughout the country. *Id.* at *7. These mere assertions, according to the Court, were unsupported and did not satisfy plaintiff's burden to show that she was similarly situated with other putative class members or subject to a common scheme.  Likewise, the court in *Sodekson* did not credit the statements of another opt-in plaintiff, whose working arrangement was governed by an arbitration agreement—a fact that made her "uniquely situated" and dissimilar to plaintiff. *Id.* at *8.

*Pfaahler v. Consultants for Architects, Inc.*, No. 99 C 6700, 2000 WL 198888 (N.D. Ill. Feb. 8, 2000) is another decision analogous to the instant case.  There, the defendant, similar to C&C, was a referral company that placed architects and design professionals with corporate clients for jobs.  The plaintiff claimed he was similarly situated with a class of 140 other hourly-paid workers who the defendant purposefully misclassified as independent contractors in order to

avoid paying overtime. *Id*. at *1. Plaintiff sought conditional certification for a collective, but the court rejected Plaintiff's motion for a number of reasons.  First, the court found that collective action was inappropriate because the inquiries necessary to resolve the plaintiff's claim were too onerous:

> In order to determine who is an independent contractor and who is an employee, the court would be required to make a fact-intensive, individual determination as to the nature of each potential claimant's employment relationship with CFA; this inquiry could also entail examining each claimant's relationship with the various corporate clients with whom they were placed by CFA.  Where this is the case, certification of a collective action under the FLSA is inappropriate.

*Id*. at *2.

Second, the court in *Pfaahler* examined the plaintiff's evidence and determined that he had not established that he was similarly situated with the other potential class members.  The court explained that:

> Pfahler makes no showing that other potential claimants performed the same type of duties as himself, or that they could be classified as "independent contractors."  Pfahler provides no grounds indicating his knowledge of the work other workers performed, the circumstances under which work was performed, or the circumstances of potential claimants affecting their desire to work as independent contractors or employees.  Moreover, Pfahler testified that aside from Ricondo [i.e., his job placement site], "I don't know anything about [CFA's] relationships with any other companies."  Pfahler attests that most, if not all, of those others with whom he worked while at CFA held ministerial, non-supervisory positions, with little or no exercise of discretion or judgment.  However, **Pfahler's belief as to the nature of the employment relationship between other workers and CFA is insufficient to meet the similarly situated requirement.  Pfahler must point to something concrete aside from his belief**.

*Id*. (internal citations omitted) (emphasis added).  The court also rejected the plaintiff's argument that the similarity of the procedures through which workers registered and were paid was important in determining whether to certify a collective; instead, the court explained that such

information was not probative of the nature of potential class members' employment status with each of the various corporate clients with whom they were placed. *Id*. at *3.

Other district courts have likewise rejected independent contractors' request to certify a class of allegedly misclassified workers. *See Bedoya v. Aventura Limousine & Transp. Service, Inc.,* No. 11-24432-CIV, 2012 WL 1933553 *4 (S.D. Fla. April 10, 2012). In *Bedoya*, the plaintiffs alleged, among other things, that they were similarly situated to other drivers in a proposed class because all were classified as independent contractors; participated in a required training course; and were subject to the defendants' policies and procedures. The plaintiffs also submitted nine affidavits in support of their motion. Nevertheless, this showing was not enough. The court keyed on the plaintiffs' failure to provide certain information necessary to demonstrate that they and the proposed class members were similarly situated:

> Oddly, however, nowhere can the Court determine whether the potential class members all worked in the same geographic location. The Complaint merely alleges that Aventura "was engaged in business in Florida, with a principle [sic] place of business in Florida", hardly helpful for the purpose of this analysis. There are no allegations as to where or how far various Plaintiffs drove. It is also unclear to the Court whether the Plaintiffs were subject to the same direct management at the same site, or different sites. It is not clear whether the individual Defendants were the ones managing the proposed class of Plaintiffs, or whether there were any other managers involved. While Plaintiffs provide an extensive amount of legal discussion in the Motion, there are precious few facts in the Motion to which the legal discussion may apply.

*Id*. *4 (internal citation omitted). Because the plaintiffs provided only "scant evidence" about a purportedly similarly-situated class, they did not meet their burden to merit conditional certification. *Id*. at *5.

Here, Plaintiff has also failed to provide adequate information to show the putative class members are similarly situated to him. Plaintiff's Declaration is similar in quantum and quality

to the insufficient proof offered in *Pfahler* and *Sodekson*. Plaintiff has only offered his beliefs—not credible personal knowledge—about any class members or ways in which they are similarly situated to him.

Indeed, Plaintiff concedes that during the May 2014 to September 2015 time period, he was assigned to only one facility, Colony Ridge, located in Nags Head, North Carolina. He has presented no competent evidence about the size of the putative class; instead, he asserts (without identifying any factual support) that there are "hundreds" of potential plaintiffs. Likewise, he has not provided the Court with any information about the geographic scope of the class, how other facilities (outside Colony Ridge) purportedly operated, or the terms of any proposed class members' placements at other facilities.

Contrary to conclusory allegations in Plaintiff's brief and Declaration, Plaintiff has presented no evidence that he and the putative class members performed the same duties. (Pl. Br. P. 17; Pl. Decl. para. 3.) Plaintiff, who was assigned to only one facility (Colony Ridge), has alleged no facts and has no personal knowledge as to the job duties of other CNAs, LPNs, or RNs at other facilities in NC or other states.

Moreover, Plaintiff has failed to allege facts to show he has any personal knowledge as to the job duties of any LPNs or RNs who worked at the Colony Ridge facility or any other facility in NC or beyond. While Plaintiff tries to group all CNAs, LPNs, and RNs into a single category of "nurses," he has not and cannot show that individuals working in all these positions are similarly situated to him. The educational background, licensing/certification requirements, scope of practice, pay, and job duties vary greatly between CNAs and LPNs and RNs. Even among individuals who work as CNAs, the job duties may vary greatly from facility to facility, and Plaintiff has no personal knowledge as to the job duties of CNAs at other facilities where

C&C may have placed CNAs to work. Nor has Plaintiff shown that he is similarly situated to all "nurses" at all facilities where C&C may have placed independent contractors, given the existence of different state laws relating to CNAs, LPNs, and RNs and the provision of medical care, credentialing, and supervision/responsibility for nursing care. Although it is Plaintiff's burden to show that members of the putative class he proposes are similarly situated to him, Plaintiff did no discovery in this case during the pre-certification discovery period, and thus, has failed to meet his burden.

## II. Even if Plaintiff Had Offered *Some* Evidence to Support Conditional Certification of the Collective He Proposes, The Need for Individualized Assessments of Each Opt-In Plaintiff's Work Status Make the Class Unsuitable for Collective Treatment.

Plaintiff's primary claim – that "Excel" misclassified "nurses" as independent contractors – is fraught with individual factual and legal inquiries that make his proposed class ill-suited for treatment as a collective action.

A daunting number of factual inquiries bear upon the question of whether Plaintiff and the putative class members are similarly situated. Issues unresolved by Plaintiff's Motion include (but are not limited to): class members' relationship(s) with the various Defendants; class members' relationships with the entities that own and operate the facilities where they work, including the degree of oversight and supervision exercised by those entities; class members' nursing credentials, including varying applicable state laws concerning both certification and oversight of the provision of nursing care; class members' hours worked and methods of recording and reporting the same; class members' work duties and responsibilities as RNs, LPNs, or CNAs at different facilities and under different supervisors; and all other specific facts and circumstances that may be weighed in the determination as to whether individual class members were properly classified as independent contractors.

While Plaintiff's Brief cites a variety of cases concerning the economic realities test and the proper classification of workers, Plaintiff seems to suggest that these inquiries can be resolved globally for all of the class members without an extensive individualized analysis, which is incorrect. To the contrary, courts have found disputes like this one (*i.e.,* concerning whether the disparate class members are properly classified as employees or as independent contractors) are difficult to resolve using collective treatment.

In *Demauro v. Limo, Inc.,* No. 8:10-cv-413-T-33AEP, 2011 WL 9191, at *3 (S.D.Fla. July 3, 2014), the court explained that "The economic realities test is fact intensive and requires individualized analysis. Accordingly, a number of courts have determined that whether an individual is an independent contractor or an employee is not appropriate for determination on a class-wide basis." In that case, the court evaluated the evidence submitted and determined that every individual who would seek to join the class would have to examined separately in order to determine whether such individual is an employee or an independent contractor. *Id.* at *4. The court refused to conditionally certify the class because individualized application of the economic realities test "eviscerates all notions of judicial economy that would otherwise be served by conditional class certification." *Id.*

*Demauro's* treatment of these issues is in the mainstream. Other courts utilize the same approach. In *Bamgbose v. Delta-T Group, Inc.,* 684 F.Supp.2d 660 (E.D.Pa. 2010), a healthcare worker, on behalf of himself and others similarly situated, sought to prosecute a nationwide collective action under the FLSA against a temporary staffing agency that recruited, hired, placed, scheduled, and supervised healthcare workers providing temporary services to client facilities, arguing the agency improperly classified them as independent contractors in order to evade federal overtime compensation requirements. The court rejected plaintiff's argument that

the putative class was similarly situated because defendant had uniform policy of classifying all healthcare workers as independent contractors. *Id*. at 668. The court viewed its inquiry in this way:

> The Court must analyze whether the healthcare workers are similarly situated with respect to the analysis it would engage in to determine whether the workers are employees or independent contractors. The Court cannot only look to Delta–T's uniform classification of the workers or its common payment procedures, intranet, and telephone systems. Instead, it must determine whether the proof to demonstrate that the workers are "employees" or "independent contractors" can be applied to the class as a whole.

*Id*. at 668-669. Examining the plaintiff's factual showing in light of Third Circuit's articulated test/factors for determining the existence of an employment relationship, the court held that "determining whether the healthcare workers are employees or independent contractors . . . would not be possible on a collective basis because it would require the Court to examine the healthcare workers' distinct relationships with Delta–T and its various clients." *Id*. at 669.

In *Brown v. Rapid Response Delivery, Inc*., No. RDB-16-1203, 2017 WL 55858, *3 (D. Md. Jan. 4, 2017), courier drivers, whom the delivery service classified as independent contractors, could not pursue a collective action because the court found that adjudication would require substantial individualized determinations for each class member.

In *Bouthner v. Cleveland Constr., Inc*., No. RDB-11-0244, 2012 WL 738578 (D. Md. Mar. 5, 2012), the court denied conditional certification for construction workers who claimed they were misclassified as independent contractors. The court found that the plaintiffs' weak allegations and showing of proof were insufficient to support their request for collective action. *Id*. at *5 ("Aside from generally stating that they occasionally worked in excess of forty hours and did not receive overtime compensation, they can point to no overarching policy, do not identify which Defendant directed the overtime work, do not describe the nature of the work, and

generally provide no supporting evidence for their allegations"). But even if those plaintiffs had provided the needed factual support for their motion, the court explained that certification would still be inappropriate "as a result of the myriad of individualized factual and legal issues that would predominate." *Id*. at *6.

Under similar circumstances, other courts have also declined to grant conditional certification of proposed FLSA classes. *In Re FedEx Ground Package System, Inc. Empl. Prac. Litigation*, No. 05-527 (MDL-1700), 2009 WL 2242231, *8 (N.D. Ind. Jul. 29, 2009) (the court denied plaintiffs' § 216 (b) motion because the court would have to apply the economic realities test, which would require it to "focus on the economic reality of the nature of the working relationship, requiring consideration of all the circumstances of the work activity, not just one isolated factor"); *In Re Wells Fargo Mortgage*, 571 F.3d 953, 958 (9th Cir. 2009) (finding court abused its discretion in certifying class and explaining that judicial economy is not served by certification order based on an employer's treatment of all employees "as exempt from federal overtime requirements;" this approach "disregards the existence of other potential individual issues" that are "not susceptible to common proof..."); *Reich v. Homier Distributing Co., Inc.*, 362 F. Supp. 2d 1009, 1014-15 (N.D. Ind. 2005) (collecting cases in which courts have refused to allow collective actions when an individualized, fact-specific inquiry into each plaintiff's duties would be required).

In this case, the factual and legal analysis as to whether Plaintiff and any putative class members were properly classified by C&C as independent contractors requires an extensive, individualized analysis based upon the specific facts and circumstances of each individual's economic realities and work circumstances. Plaintiff has failed to show that the facts applicable to his classification will be the same or substantially similar to the facts applicable to the analysis

for other CNAs, LPNs, or RNs who may have worked as independent contractors for C&C at Colony Ridge or other facilities (either within or outside NC). Plaintiff has not identified the duties, qualifications, or responsibilities of the various putative class members or any facility-specific, state-specific, or defendant-specific policies potentially applicable to them.

By way of example, CNAs, LPNs, and RNs have very different work circumstances based solely on their titles/positions. CNAs, LPNs, and RNs who work at different facilities, under different supervisors, with different policies/practices, and in different states may likewise have very different work circumstances and economic realities. Additionally, facility-specific policies instituted by Defendants and/or unnamed entities and operators of facilities may impact an individual defendant's ability to pursue the unavoidable consequences doctrine[4] as an affirmative defense. Plaintiff has likewise made no showing of how different state laws concerning nursing credentialing and the provision of care by RNs, LPNs, and CNAs affect duties. And without identifying any specific facilities other than Colony Ridge, he can only speculate as to what RNs, LPNs, and even CNAs do at any locations other than Colony Ridge.

Nor has Plaintiff made any credible allegations about how different classes of "nurses" at unidentified facilities (working under different supervisors) recorded their time. This, too, is fatal to his Motion. In fact, the need to resolve the factual question of how many hours individuals in a class worked can derail a motion for collective treatment. *See Archer v. Freedmont Mortg. Corp.*, GLR-12-1099, 2013 WL 93320, *4 (D. Md. Jan. 7, 2013) (refusing to certify conditional FLSA class where individual inquiries into class members' hours worked would have made class unmanageable due to individual time inquiries); *Ray v. Motel 6*

---

[4] Under the avoidable consequences doctrine, employees have a duty to mitigate the harm by complying with the employer's pay practices policies and internally reporting any FLSA violations.

*Operating, LP,* No. 3-95-828, 1996 WL 938231, at *4 (D. Minn. Mar. 18, 1996) (holding plaintiffs not similarly situated because, *inter alia,* potential plaintiffs worked in twenty different states, at thirty-nine different properties; court further recognized that different hours plaintiffs worked demonstrated lack of commonality for damages); *Syrja v. Westat, Inc.*, 756 F.Supp.2d 682, 685 (D.Md.2010) (where calculation for damages would require complex reconstruction for all class members and where the class members did *not* "work in a single location, in similar positions, under a single management structure," lawsuit did not present a case that would be resolved efficiently on a classwide basis.).

Thus, even if Plaintiff had made the requisite showing of facts establishing he was "similarly situated" to other putative class members, as required for his Motion, the individual factual inquiries necessary to resolve this case are likely to predominate, and judicial economy will be hindered rather than promoted by certification of a collective action. Accordingly, the Court should deny Plaintiff's Motion.

**III.  Plaintiff's Use of the Term "Excel" to Refer to the Responding Defendants Does Not Establish "Common Scheme" or Otherwise Serve to Meet His Burden of Proving He is Similarly Situated to the Putative Class Members.**

Just as Plaintiff conflates CNAs, LPNs, and RNs as of "nurses," Plaintiff has lumped the Responding Defendants together as "Excel" (or "Staffing Employer") in the Amended Complaint. Such conclusory allegations against all Responding Defendants, however, do not show that they acted jointly or pursuant to a "common scheme." Indeed, the evidence before the Court shows the separate and distinct nature of the corporate entities and individuals. (Tolin Aff. ¶¶ 3-5, 13, 17)

In support of his Motion, however, Plaintiff again introduces filings from the 2012 lawsuit *Craven v. Excel Staffing Service, Inc.*, No. 14-cv-02860 (S.D. Tex.). Yet, that lawsuit,

which was settled between the parties without any admission of liability, is wholly irrelevant to this case. The history, circumstances, and claims in that prior dispute have no bearing upon or relevance to the issues here. *United States v. Quality Built Const.,* 358 F. Supp. 2d 487, 490 (E.D.N.C. 2005) (Boyle). The fact that dispute may have settled is also of no import. *Id.* ("under Fed.R.Evid. 408, evidence of offers of settlement is inadmissible, even those settlements between a party and a non-party"). Further, the allegations in *Craven* differ from the allegations here. *Craven* involved allegations by an <u>employee</u> who claimed she and a class of non-exempt nurses were entitled to overtime because she was misclassified as an exempt employee, not that she was improperly classified as an independent contractor. *See* D.E. 78, ¶¶ 1.1, 1.4; Affidavit of D. Tolin, ¶ 12. Likewise, that case did not involve the same defendants as the instant dispute; Tar River and C&C were not defendants. Thus, try as he might to transform the unsubstantiated claims from *Craven* into relevant "evidence" here, Plaintiff's efforts are unavailing.

Plaintiff also attaches to his brief undated printouts that he erroneously and without any evidence or personal knowledge attributes to being a webpage maintained by "Excel" – that is, all the Responding Defendants. [D.E. 78-3, 78-4, 78-6, 78-7] Plaintiff's attribution of the webpage to each of the Responding Defendants is without merit, and his interpretation as to what this language means is incorrect and wholly unsupported by any evidence.[5] Attached to the Affidavit of Mr. David Tolin, however, are true and accurate printouts from the Excel Staffing website, with an explanation of their import. *See* Tolin Aff. ¶¶ 7-9.

---

[5] Although Excel Staffing has been in this case since the beginning, Plaintiff made no effort through discovery to have anyone at Excel Staffing authenticate or explain the information contained in the webpages to which he cites. If Plaintiff had engaged in discovery with respect to this issue, he would be aware that the meaning he now attempts to attribute to the language on Excel Staffing's webpage is wholly inaccurate. *See* Affidavit of David J. Tolin.

To wit, Excel Staffing's website includes certain pages with content directed to two different audiences: potential clients and potential employees (CNAs, LPNs, RNs) to place with clients. *Id.* at ¶ 7. Language on the page directed at potential clients previously indicated that Excel Staffing does not require clients to pay it an additional premium or charge when Excel Staffing's non-exempt employees worked in excess of 40 hours/week at the client's facilities. *Id.* at ¶ 9. Plaintiff, however, misconstrues the "No overtime charges" language on Excel Staffing's prospective *client* page as a declaration that Excel Staffing – and the rest of the Responding Defendants—refuse to pay overtime to employees or independent contractors on *any* occasion. *See* D.E. 78, p.6. Plaintiff's opportunistic reading of the Excel Staffing website is unsupported by fact and, in any event, inapplicable to any defendant other than Excel Staffing, which, in fact, classified Plaintiff as an employee and paid him overtime during his employment with Excel Staffing. *See* Tolin Aff. ¶¶ 5, 10; Ex. A. Likewise, Plaintiff has not offered any website or illustrative materials for C&C, ESPN, David Tolin, or Frederick Tolin; he cannot "invent" such materials by merely alleging that Excel Staffing's website (www.excelnursing.com) belongs to these entities, too.

Further, none of the cases cited by Plaintiff relating to joint employment or otherwise allow Plaintiff to use such conclusory and unsupported allegations (from a prior lawsuit or from Excel Staffing's website) against Excel Staffing – or against all Responding Defendants. Nor do they relieve Plaintiff of his burden to show that the members of the proposed class are similarly situated to him. Plaintiff, however, has offered no evidence that Responding Defendants operated as a single enterprise or had some common plan or scheme that was applied to him *and* other putative class members. To the contrary, Plaintiff was treated and compensated as an employee during his work with Excel Staffing. (Tolin Aff. ¶ 5) While Plaintiff worked as a

contractor for C&C at Colony Ridge, none of the other Responding Defendants were involved in managing or supervising any of the services that Plaintiff performed at Colony Ridge. (*Id.* at ¶¶ 16-18, 21-22) Moreover, Excel Staffing Professional Nursing, Inc. ("ESPN") never operated as a business and had no involvement with the work that Plaintiff performed (in any capacity) at Colony Ridge. (*Id.* at ¶ 21) Similarly, Mr. Frederick Tolin was not involved in the operations at Excel Staffing during the time Plaintiff was employed there, and he never had any involvement in the operations of C&C or involvement or interaction with Plaintiff during the time he worked as a contractor for C&C. (*Id.* at ¶ 22) Plaintiff has offered no evidence otherwise.

## IV. Certifying the Proposed Collective and Facilitating Notice Would Unnecessarily Solicit Frivolous Litigation.

Without providing any support in his Motion or Memorandum of Law, Plaintiff speculates that there are "hundreds" of individuals who would fit in his proposed class. *See* D.E. 78 p. 23 ("the number of Class Members in this case *is believed to be* in the hundreds.") (emphasis added). Despite his belief about the size of the class, Plaintiff has not identified a single class member (from the Colony Ridge facility or from any unnamed facility, wherever located) who he believes is interested in joining this suit. Indeed, Plaintiff has not identified a single co-worker by name in his Amended Complaint, Motion, Declaration, or any submission to this Court. Nor has any other individual come forward with support for Plaintiff's claims or expressing a desire to join in this lawsuit. Some courts applying the FLSA would find such failures to be fatal to Plaintiff's Motion. *See Mackenzie v. Kindred Hosps. E., L.L.C.,* 276 F.Supp.2d 1211, 1220 (M.D.Fla., 2003) ("[A] showing that others desire to opt-in must be made before notice is authorized.") (citations omitted); *Haynes v. Singer Co., Inc*., 696 F.2d 884, 887-88 (11th Cir.1983) (holding the court properly declined to authorize notice to a prospective class where the only evidence presented was counsel's assertions that FLSA violations were

widespread and that additional plaintiffs would come from other stores).

Where a plaintiff does not satisfy this burden, the Court should decline the certification of a collective action in order to "avoid the 'stirring up' of litigation through unwarranted solicitation." *White v. Osmose, Inc.,* 204 F. Supp.2d 1309, 1318 (M.D.Ala.2002) (quoting *Brooks v. BellSouth Telecomm., Inc.,* 164 F.R.D. 561, 567 (N.D.Ala.1995)). Within the Fourth Circuit, at least one court has applied such principles. For example, in *D'Anna v. M/A–COM, Inc.,* 903 F.Supp. 889, 894 (D.Md. 1995), the court noted that "[a]s a matter of sound case management, a court should, before offering [to assist plaintiff in locating additional plaintiffs], make a preliminary inquiry as to whether a manageable class exists." (quoting *Severtson v. Phillips Beverage Co.,* 137 F.R.D. 264, 267 (D.Minn. 1991) (alteration in original). In making this determination, the court further concluded that "courts, as well as practicing attorneys, have a responsibility to avoid the stirring up of litigation through unwarranted solicitation," and "an employer should not be unduly burdened by a frivolous fishing expedition conducted by the plaintiff at the employer's expense." *Id.* at 894 (internal quotation marks and citation omitted).

Here, the relief Plaintiff seeks is an unjustified fishing expedition for class clients, with those frivolous costs to be borne by Defendants and this Court. Of note, if the Court denies Plaintiff's motion to conditionally certify a collective action, it is not closing the courthouse doors with respect to the individuals Plaintiff has attempted to include in his putative class. To the contrary, any individuals who believe that they were improperly classified as an independent contractor, rather than an employee, by one or more of the defendants may pursue such individual claims under the FLSA and/or any applicable state laws, which provide for potential

recovery of significant damages and attorneys' fees.[6]  In light of Plaintiff's approach to this case, and his failure to conduct any pre-certification discovery with respect to the putative class members he seeks to represent or otherwise, he has failed to show that he is an adequate representative for the putative class, or that conditional certification of the putative class is otherwise appropriate or needed in these circumstances.

## V.  Were the Court to Conditionally Certify a Collective, That Class Should be Far Narrower than that Proposed by Plaintiff.

As explained above, Plaintiff has failed to meet his burden of showing that a collective should be conditionally certified in this case.  But in the event that the Court were to consider conditionally certifying a collective, that group should be no broader than Certified Nursing Assistants classified as independent contractors who worked at the Colony Ridge facility for the benefit of Contractors & Consultants, Inc. and Colony Ridge during the two years preceding the date the Court grants conditional certification.

Case law shows that courts routinely police the size and scope of the proposed conditional classes.  Authorities Plaintiff cites in his Motion indicate as much.  *See Adams v. Citicorp Credit Services, Inc*., 93 F. Supp. 3d 441, 455 (M.D.N.C. 2015) (rejecting proposed class comprised generally of call center employees in favor of a narrower class of workers who used a particular system to record their hours worked); *Bryant v. Act Fast Delivery of Colorado, Inc.,* No. 14-cv-00870-MSK-NYW, 2015 WL 3929663, *4 (D. Colo. June 25, 2015) (rejecting broad class proposed by plaintiffs in part because "Other than the Plaintiffs' conclusory allegations, there is no indication that drivers serving any of the Defendants' other numerous customers throughout Colorado were required to work hours or under circumstances similar to

---

[6] Again, Responding Defendants are not currently aware of any individuals, other than Plaintiff, who seek to join this lawsuit.

the Plaintiffs"); *see also Aldertoy v. Maxim Healthcare Services, Inc.*, No. TDC-14-2549, 2015 WL 5675527, *8 (D. Md. Sept. 23, 2015) ("But where Plaintiffs have not submitted any evidence regarding the work of Senior Staffing Recruiters, and did not even submit the position description for either a Senior Recruiter or a Senior Staff Recruiter, the Court concludes that it lacks sufficient evidence, even under the lenient standard, to evaluate this question at all.").

Still, Plaintiff's evidence is insufficient to support even this narrow, alternative class. The framework for evaluating any alternative class is the same as above. Neither Plaintiff's Amended Complaint nor his Declaration establishes that Plaintiff and other independent contractors at Colony Ridge are similarly situated. Plaintiff merely argues that he and other "nurses" engaged in basic "patient care" activities. [D.E. 78-5, ¶3.] He has not provided job descriptions or job duties for RNs, LPNs, and CNAs at Colony Ridge or asserted that any RNs' and LPNs' *primary duties* are the same as his were. *Id.* Likewise, Plaintiff describes in only the most general term the level of control and supervision to which he and the members of his large proposed class were subjected. *See* D.E. 78-5, ¶7 ("Defendants instructed their nurses, including myself, as to when, where, and how to perform the work."); D.E. 22 , ¶31 ("Plaintiff and Class Members must adhere to Defendants' policies in performing their work, including policies related to patient care, scheduling, and reporting time worked."). These sworn and unsworn threadbare statements do not illuminate the totality of the circumstances of independent contractors' work at Colony Ridge or describe the supervisors or policies that purportedly directed their work.

Moreover, even if the Court found that Plaintiff had made a showing that he was similarly situated to this alternative class or some other narrower class, the Court would still be required to make individualized inquiries concerning each class member's claims and work

status, which requires extensive individualized assessment. As discussed, *supra* at §II, such inquiries are not appropriate for collective treatment.

**VI.    If the Court Conditionally Certifies a Collective, A Meet and Confer Would Provide the Affected Defendants with an Opportunity to Try to Address Defects and Omissions in Plaintiff's Proposed Notice Before Seeking Assistance from the Court.**

As outlined above, conditional certification is not warranted in this matter. But should the Court choose to certify some or all of Plaintiff's proposed class, Responding Defendants ask that the Court require Plaintiff and any relevant Defendants to meet and confer and submit a joint proposed notice. If necessary, the relevant parties can address without delay the content and form of the notice as well as other housekeeping matters related to the opt-in process. The meet-and-confer in this context is a common practice. *Romero v. Mountaire Farms, Inc.*, 796 F. Supp. 2d 700, 718 (E.D.N.C. 2011) (Boyle); *Zelaya v. A+ Tires, Brakes, Lubes, & Mufflers, Inc.*, No. 5:13-CV-810-F, 2015 WL 5703569, at *7 (E.D.N.C. Sept. 28, 2015) (Judge Fox denying without prejudice the plaintiffs' request for approval of the proposed notice and ordering the parties to confer and jointly submit a proposed notice); *Lorenzo v. Prime Commc'ns, L.P.*, No. 5:12-CV-69-H, 2014 WL 10935944, at *2 (E.D.N.C. Mar. 24, 2014) (Judge Howard directing the parties to confer and submit a joint proposed notice).

In the current procedural posture, Responding Defendants find it difficult to respond to Plaintiff's broad proposed notice where Plaintiff has offered so little in support of his allegations. Nevertheless, certain aspects of the proposed notice are objectionable and should be changed or addressed, either at the Court's direction or through the meet and confer process. Among other issues,[7] Responding Defendants provide the following preliminary list of concerns regarding Plaintiff's proposed notice:

---

[7] Responding Defendants expressly reserve all of their objections with respect to the content of any notice to be sent to any conditional class of plaintiffs in this suit, however configured, as well as their objections with respect to the manner by which notices are to be disseminated, returned, and/or processed.

- **Defendants improperly conflated.** Reference to the Responding Defendants as "Excel" in the proposed Notice is inappropriate and confusing. Additionally, the statement in paragraph 1 that a lawsuit "was brought against Excel [defined term] on February 13, 2016" is incorrect; certain Responding Defendants were only added later in the case through Plaintiff's Amended Complaint filed August 3, 2016.

- **Unequal opportunity for Defendants to describe their legal positions**. In paragraph 2, Plaintiff's description of "Excel's" legal position is incomplete. Each of the Responding Defendants should have the opportunity to explain its/his legal position and unique defenses in the Notice. *Labrie v. UPS Supply Chain Sols., Inc.*, C08-3182 PJH, 2009 WL 723599, at *8 (N.D. Cal. Mar. 18, 2009) (plaintiff's description of defendant's legal position in proposed notice insufficient).

- **Description of Class Counsel.** Paragraph 3 does not include contact information for the counsel for any of the Defendants in this case. It also does not suggest that potential class members can contact or retain their own independent counsel to evaluate the lawsuit or potential claims.

- **Risks to Opt-In Plaintiffs Minimized**. Among other problems, Paragraph 4 (and the proposed notice, generally) does not adequately convey that opt-in plaintiffs may have to participate in trial in North Carolina, engage in written and oral discovery, and, potentially, pay litigation costs. As written, the proposed notice does not fairly outline the costs or risks to which the any opt-in Plaintiffs would be exposed. *Cordova v. SCCF, Inc.*, No. 13CV05665-LTS-HBP, 2014 WL 3512820, at *7 (S.D.N.Y. July 16, 2014); *Behnken v. Luminant Min. Co.*, 997 F. Supp. 2d 511, 524-25 (N.D. Tex. 2014).

- **Improper Instructions to Class Members**. Paragraph 5, which again, conflates the Responding Defendants as "Excel" is confusing. Further, it unnecessarily (and improperly) instructs potential class members to contact class counsel about many work-related concerns, when those workers should first address such matters at the facilities where they work (again, Plaintiff Ferebee has only identified *one* such facility with which he was involved) pursuant to any workplace policies that might apply (again, Plaintiff Ferebee has not yet accounted for or identified such policies).

- **Improper Advertising of Class Counsel's Services**. Paragraph 6, which instructs recipients to contact Plaintiff's counsel should be deleted. *See Wertheim v. State of AZ*, 1993 WL 603552, at *6 (D.Ariz. Sept. 30, 1993) (directing plaintiff in FLSA putative collective action to omit the last paragraph of the notice about contacting plaintiff's law firm for more information); *Barrera v. US Airways Grp., Inc*., No. 2012-cv-02278 PHX, 2013 WL 4654567, at *9 (D. Ariz. Aug. 30, 2013) (accord).

- **Text Messages Inappropriate**. Dissemination of any notice by text message is not appropriate. See *Ries v. Planesphere, Inc.*, No. 16-cv-3667, 2016 WL 6277466, at *3 (N.D. Ill. Oct. 27, 2016) (noting that "U.S. Mail and a notice posted in an employee-only section are classic methods of notification in FLSA cases" and rejecting the plaintiff's request for text notification in spite of his argument that "most of the workforce is young, relies on electronic communications, and is more transient")

- **Suggestion that the Court Endorses Plaintiff's Claims is Unwarranted**. The phrase "Court Authorized Notice" should be excised from headings in the proposed notice. It is confusing to lay class members and erroneously creates the impression that the Court endorses or approves of Plaintiff's claims. *In re Wells Fargo Wage & Hour Emp't Practice Litig. (No. III)*, No. H-11-2266, 2013 WL 2180014, at *5 (S.D. Tex. May 17, 2013); *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 174, 110 S. Ct. 482, 488, 107 L. Ed. 2d 480 (1989) ("In exercising the discretionary authority to oversee the notice-giving process, courts must be scrupulous to respect judicial neutrality. To that end, trial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action.").

Finally, none of the Parties in this suit have entered a protective order to govern the exchange of information in this case. This is primarily because Plaintiff took no steps to conduct discovery in support of the underlying Motion during the precertification discovery period, and the issue did not arise. If the Court does conditionally certify a collective, Responding Defendants submit that the parties can address issues surrounding the notice and opt-in process at the same time they meet and confer about a protective order regarding would-be class members' personal information and Phase II discovery documents.

## CONCLUSION

For all of the foregoing reasons, the Plaintiff's motion to conditionally certify a collective action should be denied.

This the 24th day of January, 2017.

/s/ Patti W. Ramseur
Patti W. Ramseur
SMITH MOORE LEATHERWOOD LLP
300 N. Greene St., Suite 1400
Greensboro, North Carolina 27401
Telephone: (336) 378-5304
Facsimile: (336) 433-7418
E-mail: patti.ramseur@smithmoorelaw.com
N.C. State Bar No. 26817

/s/ Eric A. Snider
Eric A. Snider
SMITH MOORE LEATHERWOOD LLP
434 Fayetteville Street, Suite 2800
Raleigh, North Carolina 27601
Telephone: (919) 755-8758
Facsimile: (919) 838-3111
E-mail: eric.snider@smithmoorelaw.com
N.C. State Bar No. 43378

/s/ Robert R. Marcus
Robert R. Marcus
SMITH MOORE LEATHERWOOD LLP
101 N. Tryon Street, Suite 1300
Charlotte, North Carolina 28246
Telephone: (704) 384-2630
Facsimile: (704) 384-2910
E-mail: robert.marcus@smithmoorelaw.com
N.C. State Bar No. 20041

*Attorneys for Defendants Excel Staffing Service, Inc.,
Contractors & Consultants, Inc., Excel Staffing
Professional Nursing, Inc., Frederick Tolin, and
David Tolin*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
CIVIL NO. 2:16-cv-00008-BO

TYRONN FEREBEE, on Behalf of Himself )
and on Behalf of All Others Similarly )
Situated, )
)
     Plaintiff, )
)
  v. )
)
EXCEL STAFFING SERVICE, INC., )
)
     Defendant. )

## CERTIFICATE OF SERVICE

   I hereby certify that on January 24, 2017, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system, which will send notification of such filing to the

following:

| | |
|---|---|
| Don J. Foty<br>Kennedy Hodges, LLP<br>4409 Montrose Blvd., Suite 200<br>Houston, TX 77066<br>DFoty@kennedyhodges.com | Kevin S. Joyner<br>Michael D. McKnight<br>Gretchen W. Ewalt<br>Ogletree, Deakins, Nash, Smoak,<br>   & Stewart, P.C.<br>4208 Six Forks Road, #1100<br>Raleigh, NC 27609<br>Kevin.joyner@ogletreedeakins.com<br>Michael.mcknight@ogletreedeakins.com<br>Gretchen.ewalt@ogletreedeakins.com |
| Todd R. Ellis<br>Law Office of Todd Ellis, PA<br>7911 Broad River Road, Suite 100<br>Irmo, South Carolina  29603<br>todd@toddellislaw.com | |

1

/s/Patti W. Ramseur

Patti W. Ramseur
SMITH MOORE LEATHERWOOD LLP
300 N. Greene St., Suite 1400
Greensboro, North Carolina 27401
Telephone: (336) 378-5304
Facsimile:  (336) 433-7418
E-mail:  patti.ramseur@smithmoorelaw.com
N.C. State Bar No. 26817

*Attorney for Defendants Excel Staffing Service, Inc., Contractors & Consultants, Inc., Excel Staffing Professional Nursing, Inc., Frederick Tolin, and David Tolin*